# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| VERDINE MARTIN SPICER,<br>Appellant, | DOCKET NUMBER<br>DC-0752-14-0996-I-1 |
| v. | |
| SOCIAL SECURITY<br>ADMINISTRATION,<br>Agency. | DATE: March 18, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Rosemary Dettling, Washington, D.C., for the appellant.

Barry Nelson, Ealy Ko and Jennifer McMahon, Atlanta, Georgia, for
the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1  The appellant has filed a petition for review of the initial decision, which affirmed the agency's action reducing her in grade. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 Effective September 7, 2014, the agency reduced the appellant in grade from her supervisory GS‑14 Social Insurance Administrator (District Manager) position, to the nonsupervisory GS‑12 position of Social Insurance Specialist (Technical Expert). Initial Appeal File (IAF), Tab 10 at 32-43. The agency determined that the appellant was negligent in the performance of her job duties as a second‑level supervisor when she failed to take appropriate action to ensure fair and equitable treatment of employees in response to discriminatory statements made by her supervisory subordinate, D.N. *Id.*

¶3 The appellant filed an appeal with the Board regarding the reduction in grade. IAF, Tab 1. She disputed that she was negligent in the performance of her duties. IAF, Tab 16. She raised an affirmative defense of reprisal for engaging in protected equal employment opportunity (EEO) activity. IAF, Tab 1 at 5. She requested a hearing. *Id.* at 3.

¶4 After holding a hearing, the administrative judge issued an initial decision affirming the agency's action. IAF, Tab 30, Initial Decision (ID). She found that the agency proved by preponderant evidence that the appellant was negligent in the performance of her duties based on its three specifications. ID at 3‑13. She

also found that the agency established the requisite nexus between the sustained charge and the efficiency of the service and that its chosen penalty was reasonable.[2]  ID at 13‑14, 16‑18.  She concluded that the appellant failed to prove her affirmative defense of EEO reprisal.  ID at 14‑16.

¶5      The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  She again disputes that she was negligent in the performance of her duties and argues that the agency's demotion action was the result of reprisal for her EEO activity.[3]  *Id.* at 4‑5.  The agency filed a response in opposition to the petition for review, to which the appellant did not reply.  PFR File, Tab 3.

¶6      The undisputed circumstances surrounding the agency's charge are as follows.  Sometime in 2009, D.N. stated to the appellant that "she did not like men."  IAF, Tab 10 at 50, 156‑58, 198.  In response, the appellant told D.N. that the comment was inappropriate and that she could not say such things in the workplace.  *Id.* at 156, 158.  D.N. then responded, "[T]hat is the truth.  I don't want any more males in my unit."  *Id.* at 158.  The appellant subsequently transferred a male employee away from D.N.'s supervision.  *Id.* at 50.  She did not, however, document these incidents or her responses to them.  *Id.* at 156, 162.

_____

[2] On review, the appellant states that the agency's penalty was "not only extreme but harsh."  Petition for Review (PFR) File, Tab 1 at 5.  Based on this assertion, without more, we discern no basis to disturb the administrative judge's finding that the agency's selected penalty was within the bounds of reasonableness.  ID at 16‑18.

[3] The appellant claims that the agency treated her differently than white and/or male managers whose subordinates' actions resulted in lawsuits against the agency.  PFR File, Tab 1 at 5.  To the extent that she is trying to raise affirmative defenses of race and sex discrimination, we decline to consider them because she failed to raise them below.  IAF, Tab 16 at 4, Tab 18 at 3‑4; *see Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 3 n.1 (2015) (stating that the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence); 5 C.F.R. § 1201.24(b).  She also has not provided any evidence that would support a disparate penalties argument.

¶7      In November 2011, one of D.N.'s subordinates, E.H., reported to the appellant that she "felt that she was singled out by [D.N.] and that [D.N.] did not like her." *Id.* at 156. The appellant "heard there were problems" between D.N. and E.H and E.H. complained to her regarding D.N.'s attitude. *Id.* at 195. Whenever E.H. brought these issues to her attention, the appellant would speak with D.N., but D.N. "would do better for a day or two" and then "be right back to her old tricks." *Id.* E.H. also expressed her intent to retire because D.N. refused to reduce her workload, which was causing her stress and related medical issues. *Id.* at 156-57, 162-63, 195. D.N. took no action to reduce E.H.'s workload, despite the appellant's instruction to do so, and the appellant ultimately had to reduce E.H.'s workload herself. *Id.* at 163.

¶8      In April 2012, D.N. stated to the appellant that she "trusts whites more than others," which the appellant understood to mean that D.N. "trusted whites more than any other race." *Id.* at 48-49, 56, 158. In response, the appellant told D.N. "that was her choice," but that she could "get into trouble" for making such statements. *Id.* at 158. Again, the appellant did not document this incident or her response to it. *Id.* at 158, 162.

¶9      Between April 2012 and August 2012, the appellant learned that E.H. and another of D.N.'s subordinates, B.R., received unfair performance ratings from D.N. for Fiscal Year (FY) 2011. *Id.* at 157, 159-60; January 16, 2015 Hearing Compact Disc (HCD), Track 7 (testimony of the appellant). The appellant had not reviewed the ratings before D.N. issued them in October 2011. IAF, Tab 10 at 159‑60, 230‑33. The appellant told D.N. that the ratings were "not right," but D.N. just looked at her with "a mean look," and the appellant took no further action to correct the inaccurate ratings. *Id.* at 160-61.

¶10     E.H. and B.R. filed EEO complaints alleging that D.N. discriminated against them by denying them Quality Step Increases (QSI) based on their FY 2011 performance ratings. *Id.* at 186, 198. E.H. alleged discrimination based on her age, race (Asian/Pacific Islander) and national origin, and B.R. alleged

discrimination based on his race (Asian) and sex (male). *Id.* at 186, 198. In February 2013, the appellant provided affidavits during the agency's investigation of those complaints. *Id.* at 184‑200. She stated that, based on D.N.'s earlier comment that she did not like males, she believed B.R. did not receive a QSI because of his sex. *Id.* at 198. She indicated that D.N. also may have discriminated against B.R. because of his race. *Id.* She also expressed her belief that both B.R. and E.H. received unfair performance ratings and deserved QSIs. *Id.* at 193‑94, 198.

¶11     The agency thereafter interviewed the appellant regarding the statements she made in her affidavits. *Id.* at 156-63. She primarily confirmed the above‑noted facts. *Id.* She also stated that although she does not know whether D.N. discriminated against any other employees, she "was leery" based on conversations she had with D.N. *Id.* at 162.

¶12     Based on the foregoing circumstances, the agency charged that the appellant negligently performed her job duties as D.N.'s first‑level supervisor because she: (1) did not take appropriate action to ensure that employees under D.N.'s supervision were treated fairly and equitably, in light of her statement that she trusts whites more than others; (2) did not take appropriate action to ensure that employees under D.N.'s supervision were treated fairly and equitably, in light of her statement that she does not like males; and (3) failed to adequately oversee the FY 2011 performance appraisal process to ensure that all employees under D.N.'s supervision were treated fairly and equitably. *Id.* at 145‑49. The agency noted in particular that she failed to document D.N.'s comments or report them to other agency officials; failed to investigate whether D.N. had discriminated against any employees after learning of her discriminatory beliefs; acted inappropriately by telling D.N. that it was "her choice" to trust whites more than any other race; and, after improperly failing to ensure the fairness of performance

ratings before they were issued, took no action to correct the appraisals upon learning that they were unfair. *Id.* at 148‑49.

The agency proved its charge by preponderant evidence.

¶13    Culpable negligence in the performance of official duties is a failure to exercise the degree of care required under the particular circumstances, which a person of ordinary prudence in the same situation and with equal experience would not omit. *Velez v. Department of Homeland Security*, 101 M.S.P.R. 650, ¶ 11 (2006), *aff'd*, 219 F. App'x 990 (Fed. Cir. 2007). The administrative judge found that the appellant was negligent in the performance of her duties, as the agency charged. As to the first two specifications, she found that it was unreasonable and imprudent for the appellant to take no remedial action other than verbal counseling when D.N. expressed clearly illegal biases. ID at 7‑8. She concluded that it was insufficient for the appellant to simply caution D.N. not to verbalize her biases and that such a tepid response tacitly endorsed D.N.'s discriminatory sentiments. ID at 9. As to the third specification, she found that the appellant was negligent in failing to more closely scrutinize D.N.'s supervisory conduct, including the performance appraisals she prepared, given the discriminatory sentiments D.N. had expressed. ID at 12.

¶14    On review, the appellant disputes that her conduct as described above was negligent.[4] PFR File, Tab 1 at 4‑5. She points out that she verbally counseled D.N. *Id.* at 4. She claims that she was never informed of the expectation that she review performance ratings, but rather, was only responsible for ensuring their

[4] The appellant argues that the agency failed to prove its charge because it did not establish that her alleged negligence was the actual and proximate cause of E.H.'s and B.R.'s filing of EEO complaints. PFR File, Tab 1 at 4‑5. She also states that she did not receive any training regarding how to respond during EEO investigations and was never informed that she should submit her EEO affidavits for review by agency counsel before submitting them to the EEO investigator. *Id.* at 4. These arguments are irrelevant because the agency did not discipline the appellant because E.H. and B.R. filed EEO complaints, or because of her conduct during the course of the agency's investigation of those complaints.

timely completion. *Id.* at 4. She asserts that she alerted her supervisor about D.N.'s comments, but although he "at all times was aware of the situation with" D.N., he: (1) was dismissive and slow to respond; and (2) did not advise her to take any action against D.N. due to the agency's policy regarding progressive discipline, and instead instructed her to "work with" D.N. *Id.* at 4‑5.

¶15    We discern no basis to disturb the administrative judge's analysis. As to the appellant's suggestion that she met her obligation to correct D.N.'s behavior by giving verbal warnings, we disagree. The undisputed facts establish that the appellant knew or should have known that verbal warnings were wholly ineffective under the circumstances. For instance, during the conversation wherein D.N. expressed her dislike of men, she reiterated that opinion after having just been told that such statements were inappropriate. She again disregarded that counseling when she later told the appellant that she trusts whites more than people of other races. D.N. ignored the appellant's instructions to improve her attitude towards E.H. and lessen E.H.'s workload. She also blatantly ignored the appellant's comments regarding the unfair performance ratings assigned to E.H. and B.R.

¶16    We also agree with the administrative judge that the substance of the verbal counseling issued was insufficient. In particular, it was inappropriate for the appellant to tell D.N. that it was "her choice" to believe that whites are more trustworthy than people of other races. It is completely unacceptable for Federal supervisors to harbor such sentiments and for the appellant to communicate otherwise to D.N. provides further evidence of ineffective management. *See Curry v. Department of the Navy*, 13 M.S.P.R. 327, 328, 330 (1982) (finding that the appellant's comments denigrating the place of women in his workplace were discriminatory and stating that such conduct by supervisory employees "cannot go unchecked, lest the agency be said to condone such remarks by its employees").

¶17    The appellant's claim that she was unaware of the requirement for her to review all performance appraisals also provides no basis for review. Assuming arguendo that this is true, the fact remains that she admittedly took no action to correct appraisals which she knew to be unfair.[5] We also have considered the appellant's claims on review that she informed her supervisor of D.N.'s comments, and that he discouraged her from taking any action in response to them, but find them unconvincing because her hearing testimony belies those assertions. Below, she testified that she notified her supervisor that D.N. did not conduct herself professionally, in that she was mean to and spoke down to all employees. HCD, Track 8 (testimony of the appellant). However, she testified unequivocally that she did not inform him of D.N.'s comments regarding whites and males. *Id.* She has further stated that she never reported any discriminatory behavior to her supervisor. IAF, Tab 10 at 163.

The appellant failed to prove her affirmative defense of EEO reprisal.

¶18    As to the appellant's retaliation claim, the administrative judge found that although the agency learned of the appellant's negligent performance through information she provided in response to EEO complaints, the basis for the discipline was the appellant's negligent conduct as revealed through her EEO affidavits and not the EEO activity itself. ID at 14‑15. She noted that the proven misconduct warranted discipline. ID at 15. She also found credible the deciding official's testimony that he would have imposed the reduction in grade based on the appellant's negligent performance of her duties, regardless of how her negligence was discovered. ID at 15‑16; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (stating that the Board must give

---

[5] We find it significant, as the administrative judge observed, that the appellant acknowledged during her hearing testimony that she believed D.N. "deserved less trust" than other employees. ID at 11; HCD, Track 8 (testimony of the appellant). Notwithstanding, she took no corresponding action to scrutinize D.N.'s conduct. HCD, Track 8 (testimony of the appellant).

deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).  In light of our finding that the administrative judge properly sustained the agency's charge, and her credibility finding as to the deciding official, we affirm her conclusion that the agency's decision to discipline the appellant was not retaliatory, but rather, was based on her negligence as a supervisor.

¶19    Based on the foregoing, we find that the appellant has not established any basis for review and we affirm the initial decision.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the U.S. Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                          _____
                                        William D. Spencer
                                        Clerk of the Board

Washington, D.C.